684 So.2d 1102 (1996)
Oliver BOLDEN, Sr.
v.
JEFFREY'S STEEL COMPANY, INC. and Guarantee Mutual Life Company.
No. 96-CA-518.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 1996.
Rehearing Denied January 17, 1997.
*1103 William S. Vincent, Jr. and William J. Delsa, New Orleans, for Plaintiff/Appellant Oliver Bolden, Sr.
Denis Paul Juge and Kelann E. Larguier, Metairie, for Defendants/Appellees Jeffrey's Steel Company, Inc. and Guarantee Mutual Life Company.
Before GAUDIN, GRISBAUM and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiff, Oliver Bolden Sr., appeals from the judgment of the Office of Worker's Compensation (OWC) rendered in favor of defendants, Jeffrey's Steel Company, Inc. (defendant) and its insurer, Guarantee Mutual Life Company (insurer), finding that plaintiff is able to return to work. For the reasons which follow, we affirm.
On September 30, 1993, plaintiff was employed by defendant as a truck driver when he was injured in the course and scope of his employment. Plaintiff explained that the accident occurred when he was attempting to bind a piece of U-shaped steel on a tractor trailer. While using a four foot piece of pipe to attempt to tighten the binder, the pipe slipped off and struck him from his stomach to the top of his head. He testified that he believes that he lost consciousness as a result of the blow to the head. He immediately reported the accident and finished his deliveries for the day. Plaintiff's symptoms were back pain, neck pain and headaches. He testified that he consulted a physician the following day. His symptoms of pain in his back and severe headaches continued. Thereafter, he hired an attorney because his employer would not send him to a physician. Plaintiff was eventually sent to the company physician who sent him to an orthopedic specialist, Dr. Mimeles on April 6, 1994. Dr. Mimeles examined plaintiff, took x-rays and had a magnetic resonance imaging (MRI) performed. The x-rays were unremarkable and the MRI showed no pathology and no pinched nerves. Basically, Dr. Mimeles was of the opinion that, concerning his lumbar spine problem, plaintiff could return to work. *1104 He felt that plaintiff's back problem had resolved by April 20, 1994.
On April 18, 1994 Dr. Mimeles sent plaintiff to Dr. Fleming, a neurologist, concerning the headaches. Dr. Fleming did a neurological evaluation. An electroencephalogram (EEG) was performed on May 2, 1994, to see if there was evidence of a concussion or brain damage. It was normal. Dr. Fleming opined that plaintiff may have had post-concussive syndrome. He testified that headaches associated with this problem should cease, at the outside, within twelve months of the injury. When Dr. Fleming re-examined plaintiff in September of 1995, he found mild muscle spasm in the neck area but "no denervation". He expressed no opinion as to whether plaintiff could return to work.
Thereafter, still experiencing pain, plaintiff consulted his own physician, Dr. Stuart Phillips on May 10, 1994. Dr. Phillips examined the MRI taken by Dr. Mimeless and thought it showed a prominent annulus at L4-L5. Dr. Phillips suggested a CT scan and a neurology consult and referred plaintiff to Dr. Cook for the latter. Dr. Phillips found muscle spasm in the lumbar spine area with an abnormal straight leg raising test and loss of range of motion. Dr. Phillips opined that plaintiff was one of those people with a normal MRI but an abnormal back. Dr. Phillips did release plaintiff to light duty work.
Dr. Patricia Cook first saw plaintiff on January 31, 1995. She wanted another MRI taken of the cervical spine and the lumbar spine. Those were performed on July 26, 1995 and were essentially normal. She related plaintiff's headaches to the accident and did not feel that he could return to his regular employment. She noted that plaintiff had to be encouraged to use his full effort in the tests. She thought that he might be able to do sedentary work that does not require a great deal of concentration. Because of the discrepancies between the medical reports of Drs. Mimeles and Fleming, and Drs. Phillips and Cook, pursuant to La. R.S. 23:1123, an independent medical exam by Dr. James Butler was ordered.
Dr. Butler, an orthopedist, saw plaintiff on August 10, 1994. Plaintiff came to his office using a cane for ambulation. Dr. Butler reviewed the MRI of the lumbar spine that had been taken previously and found that it appeared completely normal. He also reviewed x-rays of the lumbar spine which appeared normal. He had x-rays taken of the cervical spine and they showed no remarkable findings. Upon examining plaintiff Dr. Butler found no muscle spasm. It was Dr. Butler's opinion at that time that there was no evidence of disc herniation causing plaintiff's lower back pain. Dr. Butler was of the view that neither a CT scan nor an MRI was necessary. Dr. Butler at first recommended that plaintiff undergo a functional capacity evaluation and be enrolled in a work-hardening program. However, after he viewed a videotape of plaintiff taken on June 22 & 25, 1994, which showed plaintiff standing, walking, bending, stooping and driving a van, he changed his view, now of the opinion that the functional capacity evaluation was not necessary and that plaintiff was capable of returning to his regular employment as a truck driver.
Plaintiff filed a "Disputed Claim for Compensation" with the OWC on August 16, 1994. Trial was eventually set for August 31, 1995. On August 15, 1995, plaintiff filed an amended pre-trial statement, adding as documentary evidence the deposition of Dr. Patricia Cook. On August 31, 1995, the employer filed a motion for a continuance. They argued that since the deposition testimony of Dr. Cook revealed that she was of the view that plaintiff could not return to work, they wanted an opportunity to obtain an updated neurological opinion by their neurologist, Dr. Fleming. The continuance was granted and the case was reset for trial on February 7, 1996.
Trial was held on February 7, 1996 and the case was held open for post trial memoranda of both sides. Thereafter, on March 22, 1996 judgment was rendered in favor of defendant and against plaintiff, finding that plaintiff is able to return to his regular employment. It is from this judgment that plaintiff appeals.
On appeal plaintiff assigns seven errors. First, plaintiff argues that the trial court erred in granting the defense continuance on August 31, 1995, the morning of trial. *1105 Plaintiff argues that the case was continued simply because the defense had not adequately prepared for trial.
Defendant argues to the contrary that the continuance was made necessary by plaintiff's August 15, 1995 amendment to his pre-trial statement in which he added the deposition of Dr. Cook. It was because of that addition that defendant needed the continuance to rebut the new evidence.
Under La. C.C.P. art. 1601 a continuance may be granted in any case if there is "good ground therefore." Interpreting that article, it has been held that the trial judge is vested with wide discretion in granting or denying a continuance and his ruling will not be disturbed on appeal in the absence of clear abuse of that discretion. Matter of Leaman, 94-119 (La.App. 5th Cir. 9/14/94), 643 So.2d 1286; Gilcrease v. Bacarisse, 26,318 (La.App. 2nd Cir. 12/7/94), 647 So.2d 1219, writs denied, 95-0421 (La.3/30/95), 651 So.2d 845.
In determining whether to grant a continuance, the trial judge must consider the particular facts in each case. Some factors to consider are diligence, good faith, and reasonable grounds. Gilcrease v. Bacarisse, supra.
In the instant case, we find no abuse of the trial court's wide discretion in determining whether the continuance should have been granted. Plaintiff amended his pre-trial order, just two weeks before trial, to add the deposition of Dr. Cook. Prior to that inclusion, there was little evidence of plaintiff's continued disability. Defendant's request to have plaintiff reexamined by their neurologist to update the diagnosis in response to Dr. Cook's testimony was not indicative of a lack of diligence or good faith and was not unreasonable.
Plaintiff argues that the defense could have had the re-examination conducted in the two week interval between the addition of Dr. Cook's deposition to the pre-trial order and the trial date. While this may be correct, we do not find the fact that the trial judge exercised his discretion to allow defendant more than the two weeks rises to the level of abuse of that discretion. Accordingly, we find no error in the trial court ruling granting the defense requested continuance.
Next plaintiff argues that the hearing officer erred in admitting the surveillance videotape taken of plaintiff. It is argued that the proper foundation was not laid for the admission of the tape. Troy Harris (Harris), the owner of the private investigation firm that took the videotape, was called to testify in the introduction of the tape into evidence. He was not the person who took the videotape and had no first hand knowledge concerning it. Further, only the duplicate was admitted into evidence.
The determination of whether motion pictures or videotapes are admissible is largely within the discretion of the trial court. Olivier v. LeJeune, 95-0053 (La.2/28/96), 668 So.2d 347. Lafleur v. John Deere Co., 491 So.2d 624, 632 (La.1986). Determination of the admissibility into evidence of videotapes must be done on a case-by-case basis depending on the individual facts and circumstances of each case. Douglas v. G.H.R. Energy Corp., 463 So.2d 5, 7 (La.App. 5th Cir.1984). The trial court must consider whether the videotape accurately depicts what it purports to represent, whether it tends to establish a fact of the proponent's case, and whether it will aid the jury's understanding. Against those factors, the trial court must consider whether the videotape will unfairly prejudice or mislead the jury, confuse the issues, or cause undue delay. The trial court may exclude the evidence if the factors favoring admission are substantially outweighed by the factors against admission. Louisiana Code of Evidence articles 401-403; Malbrough v. Wallace, 594 So.2d 428, 431 (La.App. 1st Cir.1991), writ denied, 596 So.2d 196 (La.1992); U.S.F. & G. v. Hi-Tower Concrete Pumping, 574 So.2d 424 (La.App. 2nd Cir.1991), writs denied, 578 So.2d 136, 137; Burk v. Illinois Central Gulf Railroad Co., 529 So.2d 515 (La.App. 1st Cir.), writ denied, 532 So.2d 179 (La.1988).
As previously noted in the context of a worker's compensation case,
evidence in the form of moving pictures or videotapes must be approached with great *1106 caution because they show only intervals of the activities of the subject, they do not show rest periods, and do not reflect whether the subject is suffering pain during or after the activity.

Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65, 68 (La.1983).
Therefore, although videotapes might generally be admissible, they are to be viewed cautiously. However, in the instant case, there is a problem with the lack of a proper foundation being laid for the introduction of this tape into evidence.
Harris, the person from the investigative firm who testified in court, was not the person who took the video film. He testified that once the film is turned over to his office by the investigator, it is kept in his office and copied, with only minor editing, for the client. But there was no one present to testify concerning the actual filming. In other words, no one appeared in court to testify with first hand information concerning the making of the tape. Plaintiff's counsel objects to this as well as to the introduction into evidence of only a copy of the tape and not the original. Although defense counsel had the original in court and offered to show it to the judge, only the copy was introduced into evidence. Under La. C.E. art. 1002, to prove the content of a photograph, or in this instance a videotape, the original is required. The authenticity of the duplicate copy was contested by plaintiff.
The admissibility of a videotape must be determined on a case by case basis. Considering the initial suspect nature of such videotapes, we find it of particular concern, in this case, that the person who took the pictures or made the videotape was not present to testify. Harris, who testified concerning the admission of the tape into evidence, could only testify concerning what happened to the tape after it came into his possession. But he could not testify concerning any of the circumstances of how the tape was made, for example, why there was only 20 minutes of video for a two day surveillance.
Further, the hearing officer allowed the admission into evidence of the duplicate rather than the original, where the authenticity of the duplicate had been called into question by plaintiff. Additionally, it became apparent at trial that there was other videotape taken by this investigative agency, on a different date, that was not turned over to plaintiff pursuant to a timely discovery request. Accordingly, after considering the factors for and against admission of the videotape into evidence, as set out above, we find that the hearing officer erred, in this case, in admitting the duplicate copy of the videotape into evidence.
Plaintiff's remaining three assignments of error can be consolidated into the argument that the hearing officer committed manifest error in finding that plaintiff was capable of returning to his regular occupation and/or that he was not entitled to any further compensation.
The OWC judgment found both that plaintiff was able to return to his previous employment and that plaintiff had made false statements thereby forfeiting his right to compensation benefits.
Plaintiff argues that the hearing officer made incorrect factual findings in his reasons for judgment and erroneously ignored the diagnoses of the employee by his treating physicians. Plaintiff also argues that the hearing officer erroneously ruled that plaintiff had forfeited his rights to compensation benefits by making "false statements and representations in regards to his back pain and injury." It is this latter argument with which we are most concerned.
La. R.S. 23:1208, addressing misrepresentations concerning benefit payments provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit of payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
E. Any employee violating this Section shall, upon determination by a hearing officer, forfeit any right to compensation benefits under this Chapter.
The hearing officer found in the judgment that plaintiff had made false statements and representations, forfeiting his right to compensation *1107 benefits. In his reasons for judgment, the hearing officer based that conclusion on his observation of the videotape. We find that the hearing officer's ruling in this regard was clearly wrong.
Even if we were to consider the videotape, there was nothing in the tape to support that ruling. Plaintiff's testimony was to the effect that there were times, "at its worse," when his back pain was so severe that he needed a walking cane and his headaches were severe causing dizziness and preventing him from driving. The videotape, evidencing plaintiff walking without a cane and driving to the corner convenience store, does not contradict plaintiff's testimony. Moreover, because of our previous ruling concerning the inadmissibility of the videotape, the video-tape may not be considered in support of the judgment in this regard. We find no record evidence to support that part of the judgment. While there were minor discrepancies in the testimony between plaintiff's account of his physical condition following the accident and the general manager's testimony, it clearly did not rise to the level of false statements or misrepresentations provided in La. R.S. 23:1208, mandating the forfeiture of compensation benefits.. Accordingly, we find no support in the record for the hearing officer's judgment, finding that plaintiff forfeited his right to compensation benefits by making false statements.
Thus, we come to the final question in the case, that is, whether the hearing officer erred in finding that plaintiff is able to return to his previous work. The hearing officer based this finding on the lack of any objective findings by the doctors and the IME results. In essence, the hearing officer made a credibility determination and found that plaintiff had failed to prove that he was still suffering from any disability. We find no manifest error in this part of the judgment.
Although it has been held that the Louisiana Worker's Compensation Act, La. R.S. 23:1021 et seq., is to be liberally construed in favor of the worker, plaintiff's burden of proof is not relaxed. Plaintiff herein requests temporary total disability benefits, or in the alternative, supplemental earning benefits. Under La. R.S. 23:1221 the burden of proof for temporary total benefits is clear and convincing evidence and for supplemental earning benefits it is by a preponderance of the evidence.
The finding of disability within the framework of the worker's compensation law is a legal rather than a purely medical one. Manson v. City of Shreveport, 577 So.2d 1167 (La.App. 2nd Cir.1991), writ denied, 580 So.2d 928 (La.1991); Barry v. Western Electric Company, Inc., 485 So.2d 83 (La.App. 2nd Cir.1986), writ denied, 487 So.2d 441 (La.1986). Thus, the question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977); Manson v. City of Shreveport, supra. Ultimately, the question of disability, more particularly in regard to this case, whether plaintiff's back pain and headaches prevent him from engaging in his former employment, is a question of fact. An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless they are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La. 1989). The same standard applies in worker's compensation cases. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). The credibility of a witness's testimony is a factual determination which is subject to the strictest deference to the trier of fact's findings. Theriot v. Lasseigne, 93-2661 (La. 7/5/94), 640 So.2d 1305.
In the instant case, the hearing officer found that plaintiff was no longer disabled. This finding was based primarily on the finding that plaintiff's subjective complaint's of pain lacked credibility in the absence of any supporting medical evidence. We find that this determination is supported by the record and is not clearly wrong.
Under La. 23:1123, where there is a dispute as to the physical condition of an employee, the OWC director can order an independent medical exam. La. R.S. 23:1123 provides in pertinent part:
If a dispute arises as to the condition of the employee, the director, upon application *1108 of any party, shall order an examination of the employee to be made by a medical practitioner selected and appointed by the director. The medical examiner shall report his conclusions from the examination to the director and to the parties and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.
Pursuant to this provision, Dr. Butler, an orthopedist, was selected by OWC to conduct the independent medical examination (IME). Dr. Butler reviewed the previously taken MRI of plaintiff's lumbar spine and found that it appeared completely normal. He reviewed x-rays of the lumbar spine and found them to be normal. He had x-rays taken of the cervical spine and they showed nothing remarkable. Upon examining plaintiff, he found no muscle spasm. While plaintiff stated that he was in pain and needed a cane to walk, Dr. Butler could find no objective findings of disability. Dr. Butler was of the view that neither a CAT scan nor another MRI was necessary. He first recommended that a functional capacity evaluation be conducted, but after seeing the videotape[1], concluded that it was unnecessary and that plaintiff was capable of returning to his regular employment. Under La. R.S. 23:1123, the report is prima facie evidence of the facts therein.
Dr. Mimles likewise found x-rays taken of plaintiff and an MRI were normal. He felt any back injury that plaintiff had suffered as a result of the work accident had resolved and that plaintiff could return to work.
Dr. Fleming, a neurologist, found no objective signs of injury. He performed an EEG and found no signs of a concussion or brain damage. While he expressed no opinion as to whether plaintiff could return to work, he stated that headaches from the type of injury plaintiff suffered should resolve within at the most twelve months from the date of the injury.
In contrast, plaintiff testified that his back was in constant pain and, at its worst, he can not walk without a cane. He also testified that he has severe headaches requiring him to take medication that then makes him dizzy and incapable of driving. Plaintiff's wife testified consistently with her husband's testimony.
Dr. Phillips, an orthopedist selected by plaintiff, found the MRI to be normal but opined that plaintiff might be one of those people with a normal MRI and an abnormal back. In examining plaintiff he found some muscle spasm. He also found that plaintiff showed a loss of range of motion in tests he performed, but that these tests are largely subjective. He released plaintiff to light duty work.
Finally, Dr. Cook, a neurologist selected by plaintiff, also found no objective evidence of disability. The MRIs she had taken were essentially normal. She testified that headaches cannot be evidenced objectively but are diagnosed by the history taken from the patient. She did concede in her testimony that plaintiff had to be encouraged to put forth his full effort in the tests. Her opinion was that because of the headaches and required medication to alleviate them, plaintiff could not return to his previous employment as a truck driver.
Thus, in contrast to the absence of any objective findings of disability, plaintiff presented his testimony of back pain and headaches, corroborated by his wife and accepted as true by his physicians. Dr. Phillips found some muscle spasm, but Dr. Butler, who examined plaintiff subsequently, did not. Based on the record before us, and plaintiff's burden of proof, we find that the hearing officer was not clearly wrong in assessing credibility and making the determination that plaintiff was capable of returning to work.
Accordingly, for the reasons set out above, we reverse the judgment in so far as it held that plaintiff had forfeited his right to compensation benefits because of false statements, *1109 but affirm the judgment insofar as it held that plaintiff was no longer disabled.
REVERSED IN PART, AND AFFIRMED IN PART.
NOTES
[1] The fact that we have held that the videotape is not admissible does not require the exclusion of Dr. Butler's testimony. Dr. Butler's viewing of the videotape goes to the weight of his testimony rather than do its admissibility. Benoit v. Hub Enterprises, Inc., 94-0920 (La.6/3/94) 637 So.2d 490.