695 So.2d 1075 (1997)
Jeffery L. BALL
v.
WILCO MARSH BUGGIES, INC.
No. 97-CA-72.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 1997.
*1076 William G. Legrand, New Orleans, for Plaintiff/Appellant Jeffery L. Ball.
Hortence M. Patterson, Metairie, for Defendant/Appellee Wilco Marsh Buggies, Inc.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
BOWES, Judge.
Plaintiff, Jeffery Ball, appeals from a judgment of the Office of Worker's Compensation rendered in favor of defendant, Wilco Marsh Buggies, Inc., finding that Ball had reached maximum medical improvement following his on-the-job injury and that his continued complaints were not related to the injury sustained in the on-the-job accident, and further finding that he forfeited his right to workers compensation benefits because of his false statements at trial. For the following reasons, we reverse in part, affirm in part, and render decision finding that plaintiff is not entitled to further compensation benefits.

FACTS
At trial it was stipulated that Mr. Ball was an employee of defendant on May 1, 1994, on which date Ball was involved in a work-related accident. It was further stipulated that Mr. Ball received worker's compensation indemnity benefits from May 1, 1994 until December 7, 1994 and again from December 1995 until the date of trial on September 25, 1996.
Mr. Ball testified that he began his employment in the latter part of March 1994. In early April, he slipped while dismounting from a marsh buggy, and injured his right knee. He was treated by an orthopaedist, Dr. Calhoun for two weeks, and then released to return to work.
On May 1, 1994, he again injured his knee while dismounting from a marsh buggy. He was climbing off the buggy, going down a ladder, when his foot slipped, and he re-injured his right knee. At trial, Mr. Ball testified that at the time of the accident he also felt a "pop" in his right hip and back. Ball went to Dr. Calhoun, who ordered an MRI and who referred him to Dr. Mark Juneau, an orthopaedic surgeon. Dr. Juneau *1077 diagnosed possible tear of the meniscus, and possible tear in the anterior cruciate ligament. Dr. Juneau performed surgery on Ball to repair "bucket handle" tears of both the medial and lateral meniscus, but determined that the anterior cruciate ligament did not require reconstruction.
At trial, Ball testified that at the start of treatment, he complained to Dr. Juneau of hip and back pain. Dr. Juneau's records reflect that Ball first complained of these pains in July, at which point he was referred to Dr. Carl Cullicchia, a neurosurgeon, for evaluation.
Dr. Cullicchia evaluated Ball on August 9, 1994. Ball had a prior history of back injury spanning fifteen years, when he underwent a rhizotomy. During the fifteen year period, Ball had undergone five myelograms, and four disco grams. He had also injured his back eight years prior and had been treated by orthopaedist Dr. Adatto, for seven months. Mr. Ball had had a prior knee injury, with surgery, in 1991. The results of Dr. Cullicchia's examination revealed "no abnormality in support of nor suggestive of neurological injury or disease."
Ball continually complained of pain in the knee throughout his treatment with Dr. Juneau. Accordingly, Dr. Juneau performed arthroscopic surgery on Ball's knee on November 17, 1995. At that time, Dr. Juneau smoothed the rough spots of the bone. He observed that the anterior cruciate ligament was slightly frayed, but was mostly attached and was functioning normally and, therefore, he again did no reconstructive surgery on that ligament.
Dr. Juneau found that Mr. Ball reached maximum medical improvement on December 7, 1994 and that he was able to return to his former employment. Dr. Juneau discharged Ball to return to work. Ball's worker compensation benefits were discontinued at that time. Ball attempted to return to Wilco, who did not have a job for him.
Mr. Ball continued to allege that his knee was unstable, that his knee, hip and back were still painful and he was unable to work. Ball instituted this action by the filing of a disputed claim for compensation, Form 1008 against his employer and its insurer, Louisiana Worker's Compensation Corporation (LWCC). Ball testified that he tried working on a boat, and as a carpenter's helper, but was unable to do so because of the instability of his knee and also knee, hip and back pain.
On January 23, 1995, Ball was examined by Dr. David Jarrot, a neurologist, for follow-up after a visit to the emergency room for back pain. Dr. Jarrot diagnosed lumbar neuralgia. Dr. Jarrot stated that Ball was disabled for work and recommended a lumbar MRI scan. Ball testified that he did not return to Dr. Jarrot because LWCC would not pay for his visits.
In May of 1995, Ball suffered injury again when he slipped in water and fell at a Burger King restaurant. Ball sought treatment with Dr. Funk, a chiropractor. At the time of the injury, Ball reported that he hurt his right knee and his right elbow. However, at trial, Ball testified that he hurt his right elbow and his right pinkie finger, but not his knee. Dr. Funk's records reveal treatment for his elbow and they also contain a prescription for a right knee brace. The records also show that Ball told Dr. Funk that he was employed and that he "hadn't missed work" until he fell at Burger King.
Ball continued with his complaints of pain, and sought treatment with Dr. Adatto. Dr. Adatto referred him to an orthopaedist, Dr. Bernard Manale. Dr. Manale examined Ball on October 3, 1995 and the results were consistent with a diagnosis of torn anterior cruciate ligament. Dr. Manale performed surgery to repair the torn ligament on November 17, 1995, and he recommended physical therapy in December of 1995. At that time, without admitting causation, LWCC paid for the surgery and reinstated indemnity benefits, which they paid until the date of trial, September 25, 1996.
On December 19, 1995 while recuperating from surgery, Ball was hurt again when he suffered a slip and fall at Winn Dixie. The incident report states that he alleged injury to his right hip, right knee, elbow and head. However, at trial, he denied injury to the knee, stating that the knee was immobilized *1078 in a cast/brace and did not suffer trauma during the fall.
Ball continued with his complaints of pain in his knee, back and hip and alleged (and still alleges) that he is disabled because of his knee instability and pain, his back pain and also his hip pain. And he alleged (and still alleges) that the hip pain arose from the May 1, 1994 accident. Ball was sent for medical examination to Dr. Faust, who saw Ball on April 16, 1996. Dr. Faust opined that no further surgeries to the knee were necessary, but that Ball was in need of an exercise program.
Dr. Faust further opined that the back pain suffered by Ball was un related to the May 1, 1994 accident. Dr. Faust was of the opinion (considering the findings of Dr. Juneau in November of 1994), that the anterior cruciate ligament was frayed, but intact, and also considering the findings of Dr. Manale in November of 1995, that the anterior cruciate ligament was totally detached, and that Ball suffered a further injury between the November 1994 and the November 1995 surgeries.
LWCC requested an independent medical examination, and on August 9, 1996 Ball was examined by Dr. Terry Habig, an orthopaedist. Dr. Habig opined that the knee pain and difficulty experienced by Ball might be caused by a Cyclops lesion (build up of scar tissue). Dr. Habig stated that without surgery, Ball had reached maximum medical improvement, and with surgery Ball would need an additional six to eight weeks to recover.
The matter was heard on September 25, 1996. Defendants contended that the third surgery, and the resultant disability, if any, were not related to the May 1, 1994 accident and prayed that the trial court rendered judgment terminating compensation benefits. Mr. Ball contended that he was totally disabled and prayed for continued medical and indemnity benefits.
The hearing officer found that the claimant was injured on May 1, 1994, that he reached maximum medical improvement on December 7, 1994, and that there was no connexity between the accident of May 1, 1994 and claimant's alleged hip and low back problems, and that claimant forfeited his right to collect benefits for the May 1, 1994 accident by his numerous misrepresentations at trial.
Plaintiff now appeals, and alleges as error the following:
1. Whether or not the Trial Court erred in finding that Claimant/Appellant made misrepresentations which forfeited his right to benefits; and
2. Whether or not the Trial Court erred in failing to order vocational rehabilitation and supplemental benefits payable to Claimant/Appellant.

ANALYSIS
Plaintiff first alleges that the trial court erred in ruling that he had forfeited his rights to recover benefits for the accident of May 1, 1994 pursuant to La. R.S. 23:1208 because of his numerous misrepresentations at trial.
LA. R.S. 23:1208 provides, in part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
* * * * * *
E. Any employee violating this Section shall, upon determination by hearing officer, forfeit any right to compensation benefits under this Chapter.
In her reasons for judgment, the hearing officer noted that the plaintiff was not credible because he made numerous inconsistent statements throughout the trial. This finding of credibility is within the discretion of the court, and will normally not be reversed absent manifest error. Nevertheless, this Court is of the opinion that the fact that plaintiff made inconsistent statements at trial is not the type of "willful, false representation" contemplated by La. R.S. 23:1208. The record reflects that plaintiff did suffer a work-related accident, with injury, on May 1, 1994, for which he was entitled to and did receive compensation. See discussion, infra.
*1079 The only other allegation of falsity is that plaintiff now alleges that he hurt his back during the fall, although he did not initially complain of any back until two months after the accident. This, we believe, does not rise to the level of intentional falsity to allow the forfeiture of benefits. We find no support in the record for the determination of the hearing officer that plaintiff forfeited his right to benefits from that work related accident. Compare Bolden v. Jeffrey's Steel Co., Inc., 96-518 (La.App.12/11/96), 684 So.2d 1102, writ denied, 97-0418 (La.3/27/97) 692 So.2d 399. Therefore, this ruling will be reversed in this instance.
In his second allegation of error, plaintiff alleges that the trial court erred in failing to award supplement benefits and vocational rehabilitation. After a complete review of the record, we find no merit to this argument.
At trial, it was stipulated that there was a work-related accident. Plaintiff still bore the burden of proving that there was a disabling condition resulting therefrom. La. R.S. 23:1221. Plaintiff must also establish a causal link between the accident and the disabling condition. Miller v. Roger Miller Sand, Inc., 94-1151 (La.11/30/94), 646 So.2d 330; Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689; Kampen v. Conway Southwest Exp., 95-45 (La.App. 5 Cir. 4/12/95), 655 So.2d 380. Furthermore, if an accident causes a disability from which a workman would have recovered, except for further disability produced by a separate, intervening cause, there is no liability for compensation beyond the disability produced by the job connected accident. Miller, supra, citing Haughton v. Fireman's Fund American Ins., 355 So.2d 927 (La.1978).
Our standard of review was set forth in Bolden v. Jeffrey's Steel Co., Inc., supra at 1107, as follows:
The finding of disability within the framework of the worker's compensation law is a legal rather than a purely medical one. Manson v. City of Shreveport, 577 So.2d 1167 (La.App. 2nd Cir.1991), writ denied, 580 So.2d 928 (La.1991); Barry v. Western Electric Company, Inc., 485 So.2d 83 (La.App. 2nd Cir.1986), writ denied, 487 So.2d 441 (La.1986). Thus, the question of disability must be determined by reference to the totality of the evidence, including both lay and medical testimony. Crawford v. Al Smith Plumbing & Heating Service, Inc., 352 So.2d 669 (La.1977); Manson v. City of Shreveport, supra. Ultimately, the question of disability, more particularly in regard to this case, whether plaintiff's back pain and headaches prevent him from engaging in his former employment, is a question of fact. An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless they are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). The same standard applies in worker's compensation cases. Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). The credibility of a witness's testimony is a factual determination which is subject to the strictest deference to the trier of fact's findings. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305.
[Emphasis supplied].
In this case, the hearing officer rendered judgment finding no connexity between plaintiff's alleged hip and back injuries and the May 1, 1994 accident. Considering that plaintiff had suffered a chronic back condition which predated the accident, and considering the diagnosis of Dr. Cullicchia who found no neurological impairment, we cannot say that the hearing officer erred in this conclusion.
The hearing officer further found that plaintiff did suffer an injury to his right knee, but that plaintiff had reached maximum medical improvement in December of 1994. Considering the evidence of Dr. Juneau, who noted that the anterior cruciate ligament, while frayed, was intact after the work accident, and the testimony of Dr. Manale, who found that the anterior cruciate was totally severed after the non-work accident at Burger King, the hearing officer could indeed, have properly found that the subsequent surgery and the resultant disability was caused by the slip and fall which occurred at Burger King rather than as a result of work related accidents.
*1080 Although we found error in the hearing officer's ruling that the plaintiff forfeited his benefits because of false representations, we find no error in the determination that plaintiff is not entitled to continued benefits. According we find that the hearing officer correctly terminated benefits as of the date of trial.
Therefore, for the above discussed reasons, we reverse the judgment of the trial court insofar as it held that the plaintiff had forfeited his right to compensation benefits because of false statements; but we affirm the judgment insofar as it held that there was no connexity between the accident of May 1, 1994 and the alleged hip and back injury and also the finding that plaintiff had reached maximum medical improvement on December 7, 1994, and also insofar as the judgment terminated worker compensation benefits as of the date of trial.
Accordingly, we reverse that part of the judgment which holds that plaintiff was not entitled to any worker's compensation benefits because of falsity and misrepresentations and we affirm that portion of the judgment which finds that plaintiff was not entitled to any further benefits and that benefits were correctly terminated.
REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.
DUFRESNE, J., concurs.
GRISBAUM, J., concurs for reasons assigned by DUFRESNE, J.
DUFRESNE, Judge, concurring.
I concur in the results, but agree with the hearing officer that the plaintiff was not credible and made numerous misrepresentations that would preclude him from being entitled to continued workmen's compensation benefits from the defendant.