928 So.2d 668 (2006)
Isaac GILMORE
v.
Wickes LUMBER.
No. 2004 CA 2769.
Court of Appeal of Louisiana, First Circuit.
February 17, 2006.
*669 Isaac Gilmore, Walker, Plaintiff/Appellant In Proper Person.
Keith D. Thorton, Baton Rouge, Counsel for Plaintiff/Appellant Isaac Gilmore.
Kirk L. Landry, Baton Rouge, Counsel for Defendant/Appellee Wickes Lumber, Inc.
Before: PARRO, McDONALD, and HUGHES, JJ.
HUGHES, J.
This is an appeal from the Office of Workers' Compensation (OWC) denying benefits. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On or about June 11, 2001 Isaac Gilmore injured his back while in the course and *670 scope of his employment with Wickes Lumber, Inc. (Wickes)[1] on Greenwell Springs Road in Baton Rouge. Apparently, Wickes did not dispute liability for the injury. However, since Mr. Gilmore had several prior back injuries, the extent to which his symptoms were caused by his current injury was disputed. Mr. Gilmore admitted that he received workers' compensation benefits until some time in 2002.
Following termination of his benefits, Mr. Gilmore filed a disputed claim for compensation with the OWC on October 9, 2002. Thereafter, Wickes filed a motion for summary judgment asserting that there was no genuine issue of material fact as to Mr. Gilmore's condition, and that the medical evidence established he suffered nothing more than a temporary aggravation of preexisting degenerative back disease. A hearing on the motion for summary judgment was held on August 15, 2003 and the OWC judge ruled in favor of Wickes. A judgment dismissing Mr. Gilmore's claim was signed on August 25, 2003.
Mr. Gilmore appeals this judgment and asserts on appeal that genuine issues of material fact remain regarding his physical condition, and that the trial court erred in relying on the deposition testimony of his treating physician, alone, without questioning Mr. Gilmore personally concerning his injury at the hearing.

LAW AND ANALYSIS

Motions for Summary Judgment
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by LSA-C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Summary judgment shall be rendered in favor of the mover if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, XXXX-XXXX, p. 5 (La.4/9/03), 842 So.2d 373, 377; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. Hines v. Garrett, XXXX-XXXX, p. 1 (La.6/25/04), 876 So.2d 764, 765.
A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Id. at 765-66.
Pursuant to LSA-C.C.P. art. 966(C)(2), the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more *671 elements essential to the adverse party's claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. Moreover, as consistently noted in LSA-C.C.P. art. 967, the opposing party cannot rest on the mere allegations or denials of his pleadings, but must present evidence which will establish that material facts are still at issue. Cressionnie v. Intrepid, Inc., XXXX-XXXX, p. 3 (La.App. 1 Cir. 5/14/04), 879 So.2d 736, 738.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. See Richard v. Hall, XXXX-XXXX, pp. 4-5 (La.4/23/04), 874 So.2d 131, 137; Dyess v. American National Property and Casualty Company, XXXX-XXXX, p. 4 (La.App. 1 Cir. 6/25/04), 886 So.2d 448, 451, writ denied, XXXX-XXXX (La.10/29/04), 885 So.2d 592; Cressionnie v. Intrepid, Inc., XXXX-XXXX at p. 3, 879 So.2d at 738-39.
The Workers' Compensation Act provides coverage to an employee for personal injury by accident arising out of and in the course of his employment. An employee must prove the chain of causation required by the workers' compensation statutory scheme as adopted by the legislature. He must establish that the accident was employment-related, the accident caused the injury, and that the injury caused the disability. Clausen v. D.A.G.G. Const., XXXX-XXXX, p. 2 (La.App. 1 Cir. 2/15/02), 807 So.2d 1199, 1201, writ denied, XXXX-XXXX (La.5/24/02), 816 So.2d 851. A claimant has the burden of proving disability by clear and convincing evidence. See Walker v. High Tech Refractory Services, Inc., XXXX-XXXX, p. 3 (La.App. 1 Cir. 6/25/04), 885 So.2d 1185, 1188.
At issue in the instant case is whether the claimant's disability was caused by the work-related accident as required for entitlement of benefits.[2] Where the employee/claimant suffers from a pre-existing condition and the employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability. Peveto v. WHC Contractors, 93-1402 (La.1/14/94), 630 So.2d 689, 691.
In the instant case, the OWC judge ruled against the claimant, finding that the medical evidence established that Mr. Gilmore's current disability was the result of the normal progression of his pre-existing disease and was not due to the accident. The only evidence before the court regarding Mr. Gilmore's injury was the deposition of Mr. Gilmore's treating physician, Dr. Thomas B. Flynn.
Dr. Flynn testified that he had treated Mr. Gilmore for low back injuries since 1989. Dr. Flynn also testified that he had previously operated on Mr. Gilmore in 1990 for a disc rupture at L4-L5, which *672 had resulted from a prior employment-related injury. Dr. Flynn stated that for four or five years subsequent to the surgery, Mr. Gilmore did very well, but since that time he has had "multiple episodes of reinjuring his low back with associated right leg pain."
Following the June 2001 accident, Dr. Flynn examined Mr. Gilmore on July 9, 2001 and found that he had "a degree of muscle spasm[,] . . . very limited motion on bending, and had complaints of severe low back pain without radiation into either lower extremity on bending." Dr. Flynn summarized his examination by saying that Mr. Gilmore had "evidence of muscle spasm without evidence of nerve root irritation."
Even though Dr. Flynn could not discern any difference in the July 9th complaints from those Mr. Gilmore had made during examinations that occurred before the June 2001 accident, an MRI was ordered. In comparing the July 2001 MRI results with a prior 1997 MRI, Dr. Flynn stated that the 1997 MRI had showed some soft disc protrusion to the left side, while the 2001 MRI showed only some disc bulging; the prior disc protrusion had healed. Other than this improvement, Dr. Flynn could find no post-accident change from Mr. Gilmore's prior condition. Because of Mr. Gilmore's continued complaints, a myelogram and a contrast CAT scan were also performed, but showed no fresh disc herniation or other problem that could account for his symptoms.
Dr. Flynn concluded that Mr. Gilmore suffered from degenerative spine disease, and that his intermittent injuries caused him to have episodic flare-ups of this pre-existing disease. Dr. Flynn found no change in the underlying disease from which Mr. Gilmore suffered as a result of the accident at issue herein. Dr. Flynn explained that over the course of his treatment of Mr. Gilmore, beginning in the late 1980's, restrictions on Mr. Gilmore's work activities were gradually increased because of his complaints of pain, which was consistent with the progressive nature of his underlying disease process.
Nevertheless, Dr. Flynn determined that Mr. Gilmore was totally disabled for any type of work in January of 2002, based on Mr. Gilmore's continued complaints that he could not work without pain. Dr. Flynn stated unequivocally that he did not believe Mr. Gilmore's June 2001 work injury caused his disability, stating that type of injury would have caused at most a transient flare-up lasting no longer than three months. After that time, Dr. Flynn indicated that Mr. Gilmore would have returned to his baseline condition.[3] Dr. Flynn further explained that because of Mr. Gilmore's pre-existing disease, his disability would progress, even without additional injury, toward a condition of disability. Dr. Flynn summed up his opinion when he stated, "I don't think that these back injuries accelerated the course of his degenerative spine disease. They are defined incidents certainly associated with his degenerative spine disease."[4]
Thus, the only medical testimony in this workers' compensation case establishes that Mr. Gilmore suffered only an approximate three-month aggravation of *673 his preexisting degenerative back disease. Further, Mr. Gilmore admitted that he received benefits for his June 2001 accident until some time in 2002, which was a period of time in excess of three months.
Since the movant's documentation in this case is sufficient to resolve issues of material fact regarding the extent to which Mr. Gilmore's physical complaints resulted from his work-related accident, the burden of proof shifted to Mr. Gilmore to present evidence that material facts were still at issue. At that point, he was no longer entitled to rest on his allegations and/or denials contained in his pleadings. However, the record does not show that Mr. Gilmore has pointed to any pleading, deposition, answer to interrogatory, admission on file, or affidavit that contradicts the medical facts contained in Dr. Flynn's deposition. Because the medical evidence was unrebutted, we must find that Mr. Gilmore's disability was caused by his pre-existing degenerative back disease, and that the injury he suffered in the work-related accident at issue here resolved itself during the time that he was receiving workers' compensation benefits. Therefore, we find Wickes' motion for summary judgment was properly granted.
In his brief to this court, Mr. Gilmore further argues that the OWC judge should have questioned him during the hearing on the motion for summary judgment, concerning the circumstances of his accident, injury, and disability, to elicit additional information before ruling on the motion. However, as Mr. Gilmore also correctly notes, it is inappropriate to take testimony in open court on a hearing of a motion for summary judgment. See Hemphill v. Strain, 341 So.2d 1186, 1188 (La.App. 1 Cir.1976), cert. denied, 343 So.2d 1072 (La.1977); Wilkinson v. Husser, 154 So.2d 490, 495 (La.App. 1 Cir.), writ refused, 245 La. 60, 156 So.2d 603 (La.1963). See also Kirkland v. Entergy New Orleans, Inc., 2000-2542, pp. 3-4 (La. App. 4 Cir. 1/17/01), 779 So.2d 42, 44-45; Banque De Depots v. Bozel Mineracao E Ferroligas, 98-0742, p. 17 (La.App. 4 Cir. 1/27/99), 728 So.2d 533, 541; Held v. Avondale Industries, Inc., 95-1788, p. 3 (La. App. 4 Cir. 4/3/96), 672 So.2d 1106, 1108; Urban Management Corp. v. Burns, 427 So.2d 1310, 1311 (La.App. 2 Cir.1983).[5] Moreover, Mr. Gilmore was given ample opportunity to speak during the hearing on the motion for summary judgment and did in fact present several assertions to the trial court; he did not at any time ask to comment upon the facts or circumstances of his alleged work-related disability.
Mr. Gilmore also seems to assert in brief to this court that the OWC judge erred in proceeding with the hearing on the motion for summary judgment despite the fact that Mr. Gilmore's attorney failed to appear for the hearing. The transcript of the OWC hearing in this case reflects the following exchange between the OWC judge, Mr. Gilmore, and Wickes' attorney:
THE COURT: . . . Mr. Gilmore is present. Mr. Keith Thornton represents him. . . . Mr. Thornton is not present. Mr. Gilmore, I understand that you have been in contact with Mr. Thornton this morning and he advised you that he is in district court.
MR. GILMORE: Yes, Ma'am.
THE COURT: For the record, Mr. Gilmore and Mr. Landry had advised me of that this morning so we have bumped this case to the end of my docket. It is now 10:30 and Mr. Thornton is not present. *674 I work with the attorneys as much as I can, Mr. Gilmore, and if Mr. Thornton had let us know in advance that he had another court date somewhere else then I
MR. GILMORE: It just popped up yesterday.
THE COURT: If he had called us yesterday and filed a motion to continue because he had something show up quicklyI know, especiallyI don't know if he's in criminal court, but I know sometimes they can only give you like 24 hours notice to be somewhere
MR. GILMORE: That's where he is.
THE COURT:Then I would have given him a continuance, but he did not file anything with my office to my knowledge and I've given him as much time this morning as I can.
MR. GILMORE: Yes Ma'am.
[WICKES' COUNSEL]: ... Let me also just add to what you just said, I am not in the business of jamming up other attorneys, that's not my style and hopefully that's not my reputation, but I filed this motion over a month ago, about a month ago, it's been set for a month and I've received no opposition to the summary judgment. I have received no response at all to the summary judgment. My paralegal or secretary received this morning at about 8:40 a telephone call from someone supposedlynot from Mr. Thornton himself, but somebody in his office asking if we would continue the hearing without giving any particular reason for it. I respectfully decline for several reasons. First, because this has been pending for a month; second, because I've been trying to get deposition dates and discovery on this case since the inception of the claim and; third, and maybe perhaps most prominently, this case is set for trial shortly. So I respectfully declined and we've been here for quite [a while] this morning and we don't have any indication if he's coming or not. With all due respect, I would like to proceed with it if the court would allow.
THE COURT: We'll go ahead and go forward.
[WICKES' COUNSEL]: Thank you, Judge. I don't have any argument other than what's contained in the motion itself.
A continuance rests within the sound discretion of the trial court, and may be granted under LSA-C.C.P. art. 1601 "if there is good ground therefor." The trial court must consider the particular facts of a case when deciding whether to grant or deny a continuance. The trial court should consider the diligence and good faith of the party seeking the continuance and other reasonable grounds, and may also weigh the condition of the court docket, fairness to the parties and other litigants before the court, and the need for orderly and prompt administration of justice. Absent a clear abuse of discretion in granting or denying a continuance, the ruling of the trial court should not be disturbed on appeal. St. Tammany Parish Hosp. v. Burris, 2000-2639, pp. 4-5 (La.App. 1 Cir. 12/28/01), 804 So.2d 960, 963.
Under the circumstances presented in the instant case, we find no abuse of discretion in the OWC court's decision to proceed with the hearing on the motion for summary judgment in the absence of the claimant's counsel. There were no circumstances that mandated a continuance, and we do not find that the claimant was prejudiced by the absence of his attorney. Wickes' counsel clearly stated that he had no additional legal argument to make outside the motion for summary judgment previously filed, and in fact, the only discussion before the court revolved around issues raised by the claimant.
*675 After a thorough review of the record presented in this appeal, we find no error in the rulings of the trial court.

CONCLUSION
For the reasons stated herein, the summary judgment of the trial court dismissing Wickes Lumber, Inc. is affirmed; all costs of this appeal are to be borne by appellant, Isaac Gilmore.
AFFIRMED.
NOTES
[1] Wickes was improperly named in plaintiff's petition as "Wickes Lumber Company."
[2] A claimant must establish the accident caused the injury and the injury necessitated medical treatment and/or caused a disability. Newman v. Richard Price Const., XXXX-XXXX, p. 7 (La.App. 1 Cir. 8/8/03), 859 So.2d 136, 142.
[3] Dr. Flynn noted that Mr. Gilmore had been in his office four or five times the year before the current injury with similar types of flare-ups and/or complaints.
[4] Dr. Flynn further testified that in November of 2002 Mr. Gilmore was notified that further treatment was being terminated because he did not need neurosurgery. Dr. Flynn felt that Mr. Gilmore's family practitioner was capable of providing the "hand holding" treatment needed for his condition.
[5] But see Leflore v. Coburn, 95-0249, p. 10 n.5 (La.App. 4 Cir. 12/28/95), 665 So.2d 1323, 1331 n. 5, writs denied, 96-0411, 96-0453 (La.3/29/96), 670 So.2d 1234, where the trial court considered deposition testimony taken before the court.