NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-72

MARY CAROLYN HAIK DUFFY

VERSUS

HUNTER PATRICK DUFFY

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 20173855
HONORABLE DAVID BLANCHET, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Candyce G. Perret, Judges.

AFFIRMED.

**Mandi Borne Bucher**
**Attorney at Law**
**402 W. Convent Street**
**Lafayette, LA  70501**
**(337) 234-2355**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Hunter Patrick Duffy**

**Philip C. Kobetz**
**Philip C. Kobetz, LTD.**
**Post Office Box 80275**
**Lafayette, LA  70598-0275**
**(337) 291-1990**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Mary Carolyn Haik Duffy**

**PERRET, Judge.**

Appellant, Hunter Patrick Duffy ("Hunter"), seeks review of the trial court's judgment establishing a final child support award. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Hunter and Mary Carolyn Haik Duffy ("Mary Carolyn") were married on August 16, 2008. Three children were born of their marriage, namely C.H.D. on May 5, 2010, C.M.D. on May 9, 2013, and V.K.D. on August 12, 2015.[1] The parties separated in June of 2017, and Mary Carolyn filed a petition for divorce and child support on June 30, 2017. On July 19, 2017, Mary Carolyn and Hunter executed a notarial document wherein Hunter agreed to pay Mary Carolyn child support in the amount of $850.00 per month for the following three months. A judgment of divorce was rendered in favor of Mary Carolyn on July 12, 2018.

On January 23, 2018, Hunter filed an Answer and Reconventional Demand asking for the court to set his child support. Following a couple of continuances, a hearing officer conference was held on June 26, 2018. At that time, the hearing officer determined that Mary Carolyn's gross monthly income was $3,634.83 and that Hunter's gross monthly income was $4,310.86. The hearing officer recommended that Hunter pay child support in the amount of $2,292.59 per month, retroactive to November of 2017, while noting that the parties had a non-judicial agreement for payment of support for the first ninety days after the suit was filed. In making his recommendation, the hearing officer included the costs of the children's

---

[1] Although we are not required to use initials to protect and maintain the privacy of the minor children involved in child support cases pursuant to Uniform Rules, Courts of Appeal, Rule 5-1 and Rule 5-2, we choose to use the initials of the minor children in this opinion. *See Rodock v. Pommier*, 16-809 (La.App. 3 Cir. 2/1/17), 225 So.3d 512, *writ denied*, 17-631 (La. 5/1/2017), 221 So.3d 70; *Clarke v. Clarke*, 16-669 (La.App. 5 Cir. 4/4/17), 219 So.3d 1228.

private school tuition, which amounted to $1,160.83 per month, and the cost of the youngest child's daycare expenses, which amounted to $602.75 per month.

Hunter objected to the recommendation of the hearing officer, and on July 6, 2018, the hearing officer's recommendation was made a temporary order of the court pending an August 23, 2018 child support hearing.

On August 23, 2018, Hunter filed an Opposed Motion to Continue the child support trial that was scheduled for that day arguing that he had just retained new counsel and that discovery had not been completed. After a hearing on the morning of trial, the trial court denied Hunter's written motion and ordered the parties to return for trial that afternoon. Before trial, Hunter made an oral motion for the trial court to continue or to reconsider its denial of his motion to continue, which was also denied.

Both Hunter and Mary Carolyn testified at trial and the court received exhibits reflecting the income of each of the parties, the cost of tuition for the two oldest children to attend private school at Our Lady of Fatima Catholic School ("Fatima"), and the cost of daycare and aftercare for the youngest child to attend St. Mary's Early Learning Center ("St. Mary's").

After hearing the testimony and reviewing the evidence, the trial judge provided the following oral reasons for his judgment, in pertinent part:

> We have an unfortunate set of circumstances here before the Court today. We've got a couple that always had an agreement and a strong belief that the minor children should attend private school, and in particular, Fatima. The parties, throughout the marriage, were able to manage that, even when Mr. Duffy's income went down due to the downturn in the oil industry. At various times, it sounds like both families have given donations to the parties, which they've chosen to put towards their children's educations on occasion.
>
> And so the circumstances we have here [are], now we have two households. Basically, Mr. Duffy's position is: Well, now we have two households, I can't afford this anymore. Let's leave one child in Fatima, let's move the other two. I don't think that's appropriate to

2

split children up. I think that all children should be afforded the same opportunity.

So[,] the law, basically, says I'm not supposed to penalize the children because these two folks decided to set up separate households and get a divorce, and I'm not going to do that. I do believe that Mr. Duffy is voluntarily underemployed. I'm not going to tag him with that today, although I could. But he needs to get out there and find better employment. He's got a college degree . . . . So[,] he needs to be looking for a better job. It doesn't sound like his job search has been very extensive. They have plenty of safety jobs that are stable. We got plants over in Lake Charles; you got plants in Baton Rouge. I didn't hear anything about applications there.

I'm not going to make these kids suffer because these parties split up. He may have to borrow money.

Thereafter, the trial court ordered Hunter to pay child support to Mary Carolyn in the amount of $2,300.10 per month, commencing January 23, 2018, through May 31, 2018, and $2,310.78 from June 1, 2018, forward. The trial court signed a written judgment on October 17, 2018, which reflected the ruling from the bench on August 23, 2018.

Hunter now appeals this judgment, alleging the following assignment of error: "The Trial Court erred in its calculation and retroactivity of its child support order. Alternatively, the Trial Court erred in its denial of Appellant's Motion to Continue." Under this sole assignment of error, Hunter provides the following issues for review:

1. Whether the Trial Court Was Manifestly Erroneous in Applying the Facts and Evidence to the Law for the Calculating of Child Support and Abused its Discretion in Awarding Child Support to Mary in the Monthly Amount of $2310.00[:]

A. Whether the Trial Court Erred in Including the Cost of Private Schools' Tuition for the Two Older Children in the Absence of Supporting Documentation Evidencing the Actual Cost Paid for the Children Specifically, or Proof that Mary Paid for the Expenses[;]

B. Whether the Trial Court Was Manifestly Erroneous in Including the Cost of Private Schools' Tuition and Aftercare for the Youngest Child in the Absence of Supporting Documentation Evidencing the Actual Cost Paid for the Children Specifically, or Proof that Mary Paid for the Expenses[;]

3

C.   Whether the Trial Court Was Manifestly Erroneous in Its Refusal to Consider the Income in Comparison With Necessary and Reasonable Living Expenses of the Parties in Determining Whether or Not to Include Private School Expenses into the Child Support[;]

D.   Whether the Trial Court Erred in Including Extraordinary Expenses Allegedly Paid for by Mary Prior to Date of Demand[;]

E.   Whether the Trial Court Erroneously Omitted Mary's Additional Income Stated on Her Affidavit and Recurring Gifts to Mary by Her Parents[.]

2.   Whether the Trial Court Committed Legal Error by Retroactively Awarding Final Child Support Without a Finding of Good Cause[.]

3.   Whether the Trial Court Abused Its Discretion in Denying Hunter's Motions to Continue[.]

**STANDARD OF REVIEW**

The standard of review in a child support case is manifest error and, accordingly, an appellate court will not disturb a child support order unless there is an abuse of discretion or manifest error. *Bergeron v. Bergeron*, 11-130 (La.App. 3 Cir. 10/5/11), 75 So.3d 537, *writ denied*, 11-2466 (La. 1/20/12), 78 So.3d 144.  In order for this court to reverse a trial judge's factual findings, manifest error must exist. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).  Under a manifest error standard of review, this court can only reverse if it finds, based on the entire record, that there is no reasonable factual basis for the factual finding and that the fact finder is clearly wrong. *Stobart v. State*, *Dep't of Trans. and Dev.*, 617 So.2d 880 (La.1993).

**DISCUSSION**
*Tuition and Mandatory Fees:*

The first issue to address is whether the trial court erred in including the tuition and fees associated with the parties' two older children attending Fatima and their youngest child attending St. Mary's in the absence of supporting documentation evidencing the actual costs paid for the children or proof that Mary Carolyn paid for

4

the expenses.[2] Hunter argues that there was no evidence whatsoever in the form of invoices, receipts, cancelled checks, or bank statements, to prove the amounts reflected on the tuition and fee schedules were in fact the actual amounts owed, and paid, for their children to attend Fatima and St Mary's.

At trial, the published tuitions and fee schedules for Fatima and St. Mary's were introduced into evidence, without objection by the parties. Mary Carolyn also submitted into evidence worksheets that broke down the tuitions and mandatory fees for her three children to attend Fatima and St. Mary's. Mary Carolyn also submitted into evidence a couple of printouts for additional aftercare programs, (i.e. Lunch Bunch and Abate's Aftercare), for her youngest child to attend while she and Hunter worked. The exhibits reflected that the tuition and fees for the two oldest children to attend Fatima for the 2018-2019 school year amounted to $1,160.83 per month and that the cost for St. Mary's daycare and after-care for the youngest child was $602.54 per month.

Although Hunter argues that Mary Carolyn's own testimony, without any supporting evidence or third-party testimony, is insufficient for a court to reasonably determine private school tuition through a general tuition/fee statement published online, we find no merit to this argument. Both Hunter and Mary Carolyn testified that Mary Carolyn paid the school tuitions and childcare on a monthly basis and both parties acknowledged the exhibits entered into evidence properly reflected the tuitions and costs associated with sending their children to Fatima and St. Mary's. Hunter offered nothing to controvert this evidence. Accordingly, we find the record supports the trial court's factual determination that the tuition expenses for the two older children to attend Fatima were $1,160.83 per month (or $580.42 per child per

---

[2] For ease of analysis, we consolidate Hunter's issues for review 1(A) and 1(B) because both address the costs associated with the children's private school tuitions and the evidence submitted at trial.

month) on an annualized basis and that the net childcare cost for the parties' youngest child at St. Mary's was $602.54 per month on an annualized basis.

***Private School Expenses:***

Hunter argues that the trial court was clearly wrong in including the private school education expenses when the record evidences the fact that both parties lack the ability to pay for private school tuition for the three minor children indefinitely. Hunter alleges that the inclusion of private school education expenses creates a child support amount that usurps fifty-five percent of his gross income and sixty-eight percent of his disposable income, leaving him "with $1,065.29 in disposable monthly income for basic necessities, or $266.32 per household member per month."

Mary Carolyn responds in brief that Hunter's inability to pay the expense of his children's private school tuition is a result of his own decision not to pursue employment consistent with his education and training. Mary Carolyn argues that the trial court made a factual determination that Hunter was voluntarily underemployed and that the trial court was well within its discretion in including the cost of private school tuition in its calculation of child support.

Before determining whether the trial court erred in including the private school tuitions, it is worth noting that although the trial judge stated in his oral reasons for judgment that he "believed that Mr. Duffy is voluntarily underemployed[,]" he chose not "to tag him with that today." The judgment is also void of any language referencing Hunter as being underemployed. Thus, we will review the trial court's factual determination to include the private school tuitions to the basic child support obligation under an abuse of discretion standard. *See Holland v. Holland*, 34,996 (La.App. 2 Cir. 11/6/01), 799 So.2d 849.

Louisiana Revised Statutes 9:315.6 authorizes the inclusion of expenses for private school attendance as an addition to the basic child support obligation. Specifically, La.R.S. 9:315.6 provides, in pertinent part:

> By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
>
> 1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child.

According to the official comments "[t]he needs of the child met by the special or private school need not be particular educational needs but may include such needs of the child as the need for stability or continuity in the child's educational program." La.R.S. 9:315.6, cmt. (2001).

Hunter testified that he attended Fatima as a child and that he would like for his children to also attend Fatima. Specifically, he testified as follows:

> Q.    So[,] is it not true that you and Mary Carolyn spoke about where your children would go to school before y'all ever separated?
>
> A.    Correct.
>
> Q.    Isn't it true that your position was that you had gone to Fatima, and you expected your children to go to Fatima?
>
> A.    I would like them to have gone to Fatima, yes.
>
> Q.    In fact, it was a mutual agreement before -- between y'all before y'all ever separated, that your children would go to Fatima, because that was your alma mater. You loved that school, correct?
>
> A.    Correct. I would have loved for them to go there.
> Q.    In fact, [C.M.D.], who is your middle child, recently started Fatima; is that correct?
>
> A.    Correct.
>
> Q.    You were there the first day of school with him; were you not?
> A.    Correct.

7

Q. And did you not tell him how proud you were of the fact that he was attending the same school that you went to?

A. I said I was very proud of him. Yes.

. . . .

Q. But you did tell him you wanted him to go to Fatima, that day?

A. Correct.

Although Hunter desires for his children to attend Fatima, he testified that given his current expenses, he cannot afford the private school tuition. Hunter testified that he currently receives $1,080.00 a month in veteran benefits, $3,086.00 a month from Offshore Energy, for a total gross income of $4,166.00 per month. Hunter testified that his current gross monthly income is substantially less than what he made prior to the parties' separation, when we worked as a safety man in the oilfield, but that he was unable to keep his job as a safety man after the oilfield crashed in 2016.

After the parties' separation, Hunter testified that he lived with his mother, rent free, and that his total expenses at that time were $1,934.21 per month. In July 2018, Hunter voluntarily chose to move out of his mother's house and rent an apartment, which added an additional monthly expense of $1,250.00. Although Hunter testified that he has not made any effort since the parties' separation to find a job in the safety field, he has "applied for several jobs in Lafayette, ranging from Costco to . . . health-related jobs" and that he is looking for offshore work or overseas work "[t]o makes ends meet[.]"

Mary Carolyn testified that she is currently employed as a schoolteacher at Fatima, where her two oldest children attend school. Mary Carolyn testified that the oldest child, who entered third grade in August 2019, has been attending Fatima since Pre-K4, prior to the parties' separation. Mary Carolyn further testified that

when she was dating Hunter, he said "[w]e can get married at Cathedral, but our kids have to go to Fatima." Mary Carolyn testified that not only do her children go to Fatima but that her sister and brother-in-law's children also attend.

When asked if she received a benefit as a teacher, or any reduction in the tuition or fees, Mary Carolyn responded that "[a]s a teacher we have ten months to pay the prepaid amount. So[,] it's not really a discount, but we get to pay on the discounted plan." According to Mary Carolyn, "the discounted plan is a lower amount by a couple hundred a year[.]" Mary Carolyn testified that she has been paying the monthly tuition expenses for the children since the parties' separation and that her father often loans her money in order for her to pay the children's tuition and daycare.

On cross-examination, Mary Carolyn testified that prior to the separation, she and Hunter paid for the private tuitions with their joint incomes and that Hunter was making more money "up until he left." Mary Carolyn testified that she and Hunter set up a "Fatima Fund" when the children were born to hold money that was gifted to the family and that could be used for the children's education. When asked whether they paid the tuition, prior to their separation, with money that was gifted to them, Mary Carolyn testified that they would sometimes use the "Fatima Fund" money, if they wanted to, for tuition but that they "didn't depend on gifts to pay it." Mary Carolyn testified that she believed Hunter could afford private school tuition based on his current income and that they should jointly be responsible for paying their children's tuitions. When asked how Hunter could currently afford private tuition for the children, Mary Carolyn testified, as follows:

> The same way I afford to. I work really hard, and I have to borrow money when I have to borrow money, or I go without. So[,] he could go without in some areas, I'm sure, to make sure that he can pay his half of the children's tuition. You know, it's one of those things where parents will go without so that their kids can have more. His

9

mom was letting him live rent free for a long time, so that might be something else.

Sometimes borrowing money is me going without. But I – [m]y whole point of borrowing money is to maintain our – that our children can live the same lifestyle, and the same home, and the same schools, and the same life they've had before their dad walked out on them.

On review, we are mindful of the basic principles of the Louisiana child support guidelines in La.R.S. 9:315(A), mainly that "child support is a continuous obligation of both parents, children are entitled to share in the current income of both parents, and children should not be the economic victims of divorce or out-of-wedlock birth." In the case *sub judice*, both parties agreed to send their three children to private school, and both testified that there two oldest children have been attending Fatima since Pre-K4. We find there is sufficient evidence to support the inclusion of private school tuition in Hunter's basic child-support obligation and that the trial court was within its discretion in making this factual determination. Accordingly, we find no merit to Hunter's argument that the trial court was clearly wrong in its inclusion of private school education expenses into the child support award.

***Inclusion of Extraordinary Expenses:***

Hunter argues that the trial court erred in including the extraordinary expenses allegedly paid for by Mary Carolyn prior to the date of demand or, alternatively, that the trial court was manifestly erroneous in including the school expenses, which were required to have been paid prior to January 23, 2018, the date of demand. In response, Mary Carolyn argues that the trial court properly included the costs of the children's tuition and daycare in making its child support calculation and that there is no evidence in the record to support the argument that she paid these expenses prior to date of judicial demand.

10

As previously noted, the trial court is vested with much discretion in fixing awards of child support, and the court's reasonable determinations shall not be disturbed unless there is a clear abuse of discretion. *Harrington v. Harrington*, 43,373 (La.App. 2 Cir. 8/13/08), 989 So.2d 838. Additionally, a parent's obligation of support and upbringing is a legal duty owed to the child, and it cannot be renounced or suspended. *Dubroc v. Dubroc*, 388 So.2d 377 (La.1980).

At trial, Mary Carolyn and Hunter testified that Mary Carolyn was the party responsible for making the payments for the children's tuitions and day care expenses. When asked whether she pays the Fatima tuition all at once, Mary Carolyn testified that she hasn't "paid it all at once since [she] started teaching there[,]" which was in the summer of 2017. She further testified that she pays the tuition and fees for St. Mary's on a monthly basis. Hunter did not contradict her testimony on this point. Based on our review of the jurisprudence, and the record before us, we find that the trial court was within its discretion in including the tuitions and fees for the 2017-2018 school year in its child support calculation.

***Mary Carolyn's Additional Income:***

Hunter next argues that the trial court was clearly wrong in excluding the dividends and royalties as indicated in Mary Carolyn's affidavit, and by failing to include recurring gifts to her by her parents. Mary Carolyn responds that the record is devoid of any evidence of other income being received by her in the nature of dividends, interests, or "recurring monetary gifts" since the date of judicial demand.

Although the record contains a Family Law Affidavit that was filed on June 22, 2018, indicating that Mary Carolyn reported receiving interest in the amount of $67.00 and dividends in the amount of $18.31, she testified at trial that she doesn't know where those numbers came from and that she has no additional sources of

11

income other than her teaching salary. When asked whether she received any interest, royalties, or dividends, Mary Carolyn testified "Not to my knowledge."

Mary Carolyn also testified that even though her parents gifted her $5,000.00 for Christmas in 2016, they did not do so in 2017 because they couldn't afford it. Mary Carolyn testified that her father loans her "money on an as-needed basis for [her] kids, for our children's education[,]" but that she is required to pay the money back to him.

After reviewing the record and exhibits, we cannot say that the trial court abused its discretion in declining to include the $85.31 listed on Mary Carolyn's June 22, 2018 Family Law Affidavit or the alleged recurring monetary gifts from her parents. Accordingly, we find that the trial court properly relied upon Mary Carolyn's teaching salary to determine her income for the child support calculations.

### *Retroactivity of Judgment:*

Hunter next contends that the trial judge committed legal error in making the final child support award retroactive to January 23, 2018, the date of Hunter's Answer and Reconventional Demand, without good cause. According to Hunter, the parties had an agreement, filed into the record on July 19, 2017, that Hunter would pay child support in the amount of $850.00 per month. Thereafter, the hearing officer's recommendation that Hunter pay $2,292.59, retroactive to November 1, 2017, became a temporary order on July 6, 2018, pending the trial court's ruling on the final child support award.[3] Thus, Hunter argues that given the parties' notarial act that was filed into the record on July 19, 2017, the Temporary Order issued on July 6, 2018, and the absence of a finding of good cause for retroactivity, the trial

---

[3] The amount of child support recommended by the hearing officer is $7.00 per month less than the amount of child support ordered by the trial judge after the trial.

court committed legal error by making the final child support award retroactive to January 23, 2018.

The retroactivity of a child support award is governed by La.R.S. 9:315.21, which states, in pertinent part:

> A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.
>
> B. (1) A judgment that initially awards or denies final child support is effective as of the date the judgment is signed and terminates an interim child support allowance as of that date.
>
> (2) If an interim child support allowance award is not in effect on the date of the judgment awarding final child support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown, but in no case prior to the date of judicial demand.

Thus, La.R.S. 9:315.21(B) "treats a final child support award differently depending on whether there is an interim award in effect when the final judgment was signed." *Vaccari v. Vaccari*, 10-2016, p.5 (La. 12/10/10), 50 So.3d 139, 143. If there is no interim award in effect on the date of the judgment awarding final child support, then a final award is required to be made retroactive to the date of judicial demand, except for good cause shown. La.R.S. 9:315.21(B)(2). But when an interim order is in effect, La.R.S. 9:315.21(B)(1) neither expressly permits, nor forbids, a court from making a final award retroactive. *Vaccari*, 50 So.3d 139. The Louisiana Supreme Court has interpreted La.R.S. 9:315.21 to mean that "upon a showing of good cause, a trial court may order a final child support award retroactive to the date of judicial demand even though there has been an interim order in effect." *Vaccari,* 50 So.3d at 143. Absent a showing of good cause, however, the final child support award begins on the date of the signing of the judgment which awards it and terminates the interim award. La.R.S. 9:315.21(B).

13

Upon review, we find the record supports a showing of good cause for the trial court to make the child support award retroactive to January 23, 2018, the date Hunter requested for the court to "reconsider and revisit" the issue of child support. As Mary Carolyn correctly noted in her brief, Hunter's child support obligations would be significantly more if in fact this court declared the July 6, 2018 interim award in effect until the signing of this judgment. Specifically, if we were to hold the interim award, which adopted the hearing officer's recommendation that Hunter pay $2,292.59 a month, that interim award would be **retroactive to November 1, 2017**, and would increase Hunter's child support by almost $6,000.00 more than having this final judgment retroactive to January 23, 2018. Thus, we find no error in the trial court judgment rendered on August 23, 2018, and signed on October 17, 2018, ordering Hunter to pay child support "in the amount of $2,300.10 per month, commencing on January 23, 2018, through May 31, 2018, subject to a credit for his prior child support payments made during that period."

### *Hunter's Motions to Continue*:

Hunter's last argument on appeal is that the trial court abused its discretion in denying his motions to continue the trial. Hunter argues that he requested the continuances because of incomplete discovery and specifically referenced Mary Carolyn's failure to provide her most recent tax return.

In response, Mary Carolyn alleges that the trial court properly denied the motions to continue and that she provided her last year's tax return to Hunter at the hearing officer's conference. Mary Carolyn argues that she provided the required information in discovery and that it is Hunter who "provided virtually no documentation to the court."

After hearing counsels' arguments on the motions to continue, the trial judge provided the following reasons for denying the motion, in pertinent part:

14

The Court's ready to rule on the Motion to Continue. What the local court rules require is an exchange of exhibits. That has been done. So that's not a basis for a continuance here. In addition, it seems as if the undertaking of representation of Mr. Duffy, just two weeks before trial, was an imprudent move, and that's not [] grounds for a continuance. I've often told attorneys, because they come to me with a Motion to Enroll and a Motion to Continue, that's not [] grounds for continuance. People often hire new attorneys, because they think they can get a continuance. That's not a ground[] to me for granting a continuance, and I believe that's the real basis here. He decided to change horses in the middle of the stream. Now, the new horse wants more time. Not going to get it. Motion denied.

Louisiana Code of Civil Procedure Article 1601 provides that "[a] continuance may be granted in any case if there is good ground therefor." Under La.Code Civ.P. art. 1602, a continuance must be granted if "the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance." The court in *Suarez v. Acosta*, 15-750, pp. 9-10 (La.App. 5 Cir. 3/16/16), 194 So.3d 626, 632 (citations omitted) discussed the trial court's discretion in granting or denying a continuance and stated in pertinent part:

> In determining whether to grant a continuance, the trial court must consider the particular facts in each case. Some factors to consider are diligence, good faith, and reasonable grounds. The trial court may also weigh the condition of the court docket, fairness to the parties and other litigants before the court, and the need for orderly and prompt administration of justice. A trial court has great discretion in granting or denying a motion for a continuance under La. C.C.P. art. 1601, and that discretion will not be disturbed on appeal in the absence of clear abuse of discretion.

In this case, the trial judge found no merit to Hunter's arguments for continuing the trial based on the alleged outstanding discovery. The trial court specifically found that Hunter's previous attorney, Charlie Hutchens, was still counsel of record and that he had never "filed a Request or Motion for Discovery[,]"

15

and that there had not been a 10.1 Conference.  The trial court found "the opportunity to have had a discovery motion [had] long passed."  Upon review of the record, we find no error in the trial court's decision to deny the continuances.

In conclusion, we hereby affirm the trial court judgment, signed on October 17, 2018, establishing the final child support award "in the amount of $2,300.10 per month, commencing January 23, 2018, through May 31, 2018," and "commencing June 1, 2018, . . . in the amount of $2,310.78, payable one-half by the first and one-half by the fifteenth day of each month[.]"  All costs of this appeal are assessed against Hunter.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.